IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | | |
| EX REL. SYLVESTER DAVIS § | | |
| § | | |
| V. § | ACTION NO. 4:09-CV-645-Y | |
| § | | |
| LOCKHEED MARTIN CORPORATION § | | |

ORDER ON RECONSIDERATION
DENYING IN PART AND GRANTING IN PART
MOTION TO DISMISS AND DENYING MOTION TO STRIKE

Pending before the Court are defendant Lockheed Martin Corporation ("Lockheed")'s Motion to Dismiss Third Amended Complaint (doc. # 93), filed March 19, 2010, and relator Sylvester Davis's Motion to Strike (doc. # 98), filed April 9, 2010. After reconsideration, the Court DENIES IN PART and GRANTS IN PART the motion to dismiss and DENIES the motion to strike.

I. BACKGROUND

The joint-strike-fighter program ("the JSF program") is a joint program of the United States Navy and Air Force to design and construct a new fighter aircraft. (3rd Am. Compl. ¶¶ 6-7.) Lockheed is the prime contractor for the JSF program and it manufactures certain parts and performs final assembly on the aircraft. On October 26, 2001, Lockheed was awarded a contract for the development phase of the JSF program under which Lockheed was to manufacture 22 of the new fighter aircraft for testing purposes. (3rd Am. Compl. ¶¶ 34-35.)

Relator Sylvester Davis was employed by Lockheed as a "Software Lead and Software Product Manager" for the JSF program. (3rd Am. Compl. ¶¶ 68-69.) During the course of his work, Davis began to raise concerns about software development. (3rd Am. Compl. ¶¶ 25, 83.) Specifically, Davis complained that the software was not being developed according to Lockheed's

internal guidelines and the guidelines promulgated by the Software Engineering Institute ("SEI"), which is a defense-industry research-and-development center sponsored by the United States Department of Defense.

On January 27, 2006, Davis filed a sealed complaint under the False Claims Act ("the FCA") raising Lockheed's failure to follow the guidelines in developing the software under the JSF program. *See generally* 31 U.S.C.A. §§ 3729-33 (West 2003 & Supp. 2010). He filed the complaint in the United States District Court for the District of the Virgin Islands, St. Croix division ("the St. Croix Court"). *See id.* § 3732(a) (West 2003). Along with his claims regarding Lockheed's alleged improper software development, Davis claimed that Lockheed retaliated against him:

> As a result [Davis] was severely criticized, shunned from meetings which he should have attended in view of his responsibilities, ridiculed and ultimately [Davis] was forced from his job in an effort to restrict his knowledge of future violations and assigned to a different job with [Lockheed].

(Compl. ¶ 69.) (Consult 31 U.S.C.A. § 3730(h)(1) (West Supp. 2010)).

Three weeks later, on February 15, Davis signed a "Compromise and Settlement Agreement and Full and Final Release" with Lockheed. Under the agreement and in return for a monetary payment, Davis voluntarily resigned from Lockheed, withdrew a pending discrimination charge, and agreed to "release and forever discharge" Lockheed from "any and all claims . . . connected in any way" with his employment and claim for "retaliation under any other federal, state, or local laws." (3rd Am. Compl. ¶ 132; Mot. Dismiss App. 2-3.) The agreement, however, did not "waive rights or claims that may arise after [February 22, 2006]." (3rd Am. Compl. ¶ 132.)

On September 3, 2008, the government notified the St. Croix Court that it would not intervene in the action. *See id.* § 3730(b)(4)(B) (West 2003). On February 11, 2009, the St. Croix Court unsealed Davis's complaint and the government's election not to intervene. On May 11, the

St. Croix Court granted Davis leave to amend his complaint ("the second amended complaint") in an effort to "promote clarity and judicial economy [by adding] additional facts which provide greater specificity for the Court and the litigants." (Mot. to Amend 5.) Davis's retaliation claim was expanded to include his constructive termination. (2nd Am. Compl. ¶ 125.) Lockheed then moved the St. Croix Court under 28 U.S.C. § 1404(a) to transfer venue to this Court, and that motion was granted on November 2. *See* 28 U.S.C.A. § 1404(a) (West 2006).

Shortly after transfer, Lockheed filed a motion to dismiss Davis's second amended complaint for lack of standing and for failure to plead sufficiently a FCA cause of action. In response, Davis sought leave to amend his complaint ("the third amended complaint") to "supplement[] the pleadings with additional facts [that] provide greater specificity for both the Court and litigants, particularly to plead additional, specific facts relating to the already pleaded FCA violations." (Mot. for Leave 1.) This Court granted Davis leave to amend and, thus, denied as moot Lockheed's motion to dismiss. In his third amended complaint, Davis further expanded his retaliation claim to assert that "[s]ubsequent to [Davis's] constructive termination by [Lockheed], [Lockheed] has retaliated by 'black-balling' him to potential employers and making it impossible for [Davis] to find adequate employment in his field of expertise." (3rd Am. Compl. ¶ 132.) After Davis filed the third amended complaint, Lockheed filed a motion to dismiss essentially raising the same deficiencies it raised in its prior dismissal motion directed to the second amended complaint. In response to Lockheed's motion, Davis seeks to strike a discrete portion of Lockheed's appendix filed in support of its motion to dismiss.

## II. RULES 8(A), 9(B), AND 12(B)(6)

Lockheed relies on Rules 8(a), 9(b), and 12(b)(6) in seeking dismissal of Davis's third amended complaint. Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Court must accept as true all well pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *See id.*

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 556 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009). In other words, the plaintiff must "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Under Rule 9(b), a claim involving fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (stating Rule 9(b) applies to FCA

4

claims). To comply with this rule, a plaintiff must "allege the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the who, what, when, where, and how of the alleged fraud." *Willard*, 336 F.3d at 384.[1] But in cases where the plaintiff is alleging that the fraud occurred over a period of years, the plaintiff is not required to allege all facts supporting every instance when the defendant engaged in fraud. *See United States ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005). Further, if the facts relating to the alleged fraud are within the perpetrator's specific knowledge or control or where fraud occurred over an extended period of time and consists of numerous acts, the Rule 9(b) requirements are less exact. *See United States ex rel. Thompson v. Columbia Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

Although pleading fraud on information and belief is allowable, this relaxation of the specificity standard should not be construed to allow fraud claims to be based on speculation and conclusory allegations. *See Willard*, 336 F.3d at 385. A fraud complaint must provide a factual basis to support the plaintiff's belief. *See id.* In this case, it is important to remember that Rule 9(b) supplements, but does not replace, Rule 8(a)'s notice pleading. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). Rule 9(b) does not "reflect a subscription to fact pleading" and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which must make relief plausible, not merely conceivable, when taken as true. *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

---

[1]"Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

5

III. DISCUSSION

A. DAVIS'S STANDING

1. Preliminary Arguments

Davis argues that a motion to dismiss is an improper vehicle with which to challenge his standing to bring this qui-tam action. But a challenge to standing or capacity to sue can, in many cases, be determined from the face of the pleadings and, thus, may be decided in response to a dismissal motion. *See Teacher Ret. Sys. v. Reilly Mortg. Grp., Inc.*, 154 F.R.D. 156, 158 (W.D. Tex. 1994).

Davis also asserts that the settlement agreement cannot be considered by this Court because it was not attached to or incorporated into his complaint. In his third amended complaint, Davis admits that he signed a settlement agreement and cites to "Doc. 66-2 at 3 ¶ 3 . . . [,] 6," which is a copy of the settlement agreement Lockheed attached to its first motion to dismiss Davis's second amended complaint. (3rd Am. Compl. 51.) Davis contends that this Court cannot examine the settlement agreement in determining Lockheed's motion to dismiss:

> The release is not attached to or incorporated into [Davis's] Complaint. It is mentioned only in anticipation of [Lockheed's] release defense, to distinguish between released and non-released claims.

(Mot. to Strike & Resp. 1 n.1.) Davis incorporated the settlement agreement into his third amended complaint by referring to it and citing specific portions of it. Further, the authenticity of the document is undisputed. Under these facts, this Court may properly consider the settlement agreement in determining Lockheed's motion to dismiss. *See, e.g., Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004); *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002); *In re Stacs Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 n.4 (9th Cir. 1996). *See generally* 2 James Wm. Moore

6

et al., *Moore's Federal Practice* § 12.34[2] (3ᵈ ed. 2010).

## 2. Enforcement of Release

Lockheed argues that Davis lacks standing to pursue his qui-tam claims under the FCA based on his post-complaint release of such claims. In general, a plaintiff lacks standing to pursue an action after settling the underlying claim. *See, e.g., Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1150 (2009). Here, though, because Davis signed the release after he filed the complaint and because this is a qui-tam action, the release cannot be enforced to dismiss Davis's action without the consent of the attorney general and this Court. *See* 31 U.S.C.A. § 3730(b)(1) (West 2003). This consent requirement even applies to releases signed after a qui-tam action is filed but before the government decides whether to intervene. *See United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000); *cf. United States v. Purdue Pharma L.P.*, 600 F.3d 319, 326 (4th Cir. 2010) ("The FCA clearly provides that once a *qui tam* action is filed, the relator and the defendant may not settle (or at least may not voluntarily dismiss) the action."). Although Davis is not seeking a voluntary dismissal based on the release, this Court concludes that enforcement of Davis's post-filing, pre-government-intervention release is limited by the consent requirement of § 3730(b)(1). *See United States ex rel. Longhi v. United States*, 575 F.3d 458, 473-74 (5th Cir. 2009). Because neither the attorney general nor this Court have consented to the release of Davis's qui-tam claims, the release cannot be enforced to dismiss Davis's qui-tam claims under the FCA. The cases cited by Lockheed are inapplicable here because they involve pre-filing releases.

But Davis's claims for Lockheed's alleged retaliation before he resigned and before he signed the release are barred. The release clearly states that it releases "any and all claims . . . and causes of action . . . connected in any way with . . . Davis's employment with Lockheed . . . or the

7

formation, continuation, or ending of that employment . . . , including but not limited to . . . retaliation." (Mot. to Dismiss App. 3.) Thus, any pre-release retaliation by Lockheed is not actionable. Davis did not waive, however, any retaliation claims that arose after February 22, 2006. Accordingly, Davis may raise claims of retaliation that occurred after the release.

B. SUFFICIENCY OF FRAUD PLEADING

Lockheed next argues that Davis has failed to allege fraud with the requisite particularity and, thus, his third amended complaint must be dismissed. Davis alleges that Lockheed's software-development practices violated internal and external guidelines:

> Based on the acts described [in the 3rd amended complaint], [Lockheed] knowingly violated one or more of the following:
>
> a. knowingly presented, or caused to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> b. knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to get a false or fraudulent claim paid or approved by the Government.
>
> . . . The United States Government and its allied partners in the JSF Program were unaware of the falsity of these claims, records, and/or statements made by [Lockheed] and, in reliance on the accuracy thereof, paid [Lockheed] for the fraudulent claims.

(3rd Am. Compl. 52.) *See* 31 U.S.C.A. §§ 3729(a)(1)(A) (hereinafter, "the presentment provision"), 3729(a)(1)(B) (West Supp. 2010) (hereinafter, "the false-record provision").

1. Retroactivity of Recent FCA Amendment to False-Record Provision[2]

Davis's claim in paragraph "b" quoted above tracks the FCA language, as it was amended

---

[2]The FERA amendment does not affect Davis's presentment-provision claim or retaliation claim. (Mot. to Dismiss 16 n.18.)

8

on May 21, 2009, by the Fraud Enforcement and Recovery Act ("FERA"). The FERA amendment to the false-record provision expanded liability to anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C.A. § 3729(a)(1)(B). Before the FERA amendment, liability was imposed only on anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." *See id.* (West 2003). In short, the FERA amendment removed the requirement that a defendant must intend that the government itself pay the claim instead of merely showing that a false statement resulted in the use of government funds to pay a false or fraudulent claim. *See Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2128 (2008). The FERA amendment stated that it should be deemed to "take effect as if enacted on June 7, 2008 . . . [,]" and should "apply to all claims under the [FCA] that are pending on or after that date." FERA, Pub. L. No. 111-21, § 4(f)(1) (2009).

Lockheed argues that the FERA amendment does not apply to Davis's claim regarding the false-record provision because it is not a retroactive amendment. (Mot. Dismiss 16 n.18.) But the government and Davis assert that the FERA amendment applies retroactively to the entirety of Davis's case. (Mot. to Strike & Resp. 8-15; Gov't Obj. 6-14.) Several federal courts have considered this issue and have concluded that "claim" in the enacting legislation refers only to a defendant's request for payment, and not to pending FCA cases. *See, e.g., Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 n.3 (11th Cir. 2009); *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55-56 (D.D.C. 2010) (op. on recons.); *United States ex rel. Sanders v. Allison Engine Co.*, 667 F. Supp. 2d 747, 752-56 (S.D. Ohio 2009); *Mason v. Medline Indus., Inc.*, No. 07C5615, 2010 WL 653542, at *3 (N.D. Ill. Feb. 18, 2010); *see also* 31 U.S.C.A. § 3729(b)(2)

(West Supp. 2010). However, the United States Court of Appeals for the Fifth Circuit recently stated that if a complaint under the FCA is pending on June 7, 2008, the FERA amendment applies to the entirety of the case raising claims under the false-records provision even if the payment request was made before June 7, 2008. *See United States ex rel. Steury v. Cardinal Health, Inc.*, ___ F.3d ___, 2010 WL 4276073, at *3 n.1 (5th Cir. Nov. 1, 2010) (relying on *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *cert. granted*, 79 U.S.L.W. 3092 (U.S. Sept. 28, 2010)).[3] Thus, the FERA amendment applies to Davis's false-record allegations.

2. Fraud Allegations Regarding Presentment and False-Records Provisions

a. Quantum of detail required

The FCA allows private litigants to bring actions on behalf of the government against anyone who knowingly presents, or causes to be presented, to the government a false or fraudulent claim for payment or approval. *See* 31 U.S.C.A. § 3729(a)(1)(A). Further, the FCA bars anyone from knowingly making, using, or causing to be made or used a false record or statement that is material to a false or fraudulent claim. *See id.* § 3729(a)(1)(B). "Knowingly," as alleged in this case, means that Lockheed must have acted "in deliberate ignorance of the truth or falsity of the information." 28 U.S.C.A. § 3729(b)(1)(A)(ii). For both provisions of the FCA, however, the threshold for liability is whether there was a false statement or fraudulent course of conduct that (1) was made or carried out with scienter, (2) was material, and (3) caused the government to pay out money. *See Longhi*, 575 F.3d at 467; *Grubbs*, 565 F.3d at 188. Of course, the foundation of any FCA claim is

---

[3]As noted by Davis, the retroactivity of the FERA amendment is not material in the 9(b) context. (Mot. for Recons. 3 n.2.) Because intent may be averred generally, the removal of the intent requirement in the FERA amendment does not affect the sufficiency of Davis's third amended complaint. This Court addresses the retroactivity of the FERA amendment because the parties expended considerable briefing on this issue and because it may be helpful to give the parties guidance as they marshal their proof.

10

an actual false claim. *See United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008). As such, the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby" must be stated in an FCA complaint to satisfy Rule 9(b). *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999). But Rule 9(b) is context specific and flexible; thus, the level with which a plaintiff must particularly state the circumstances constituting fraud or mistake depends on the elements of the claim at hand. *See Grubbs*, 565 F.3d at 188, 190. Because the FCA lacks the elements of reliance and damages present in a common-law-fraud claim, there is no heightened need for pleading specific and expanded detail regarding the contents of the misrepresentation itself in an FCA claim. *See id.* at 189.

In the context of FCA claims raising the presentment provision, while a qui-tam relator is not required to allege in every case all of the details of a false claim, a complaint must allege particular details of a scheme to submit false claims along with reliable indicia that lead to a strong inference that claims were actually submitted. *See id.* at 190. This does not need to be proof of the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted. *See id.* In a case alleging a scheme to defraud, the particular circumstances "are often harbored in the scheme" itself and make it "highly likely the fraud was consummated through the presentment of false bills." *Id.* In short, the failure to plead the details of an actually submitted false claim is not necessarily fatal to a claim brought under the presentment provision:

> [T]o plead with particularity the circumstances constituting fraud for a [FCA claim under the presentment provision], a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

11

*Id.* A complaint must include particular details of a scheme to present fraudulent bills to the government and allegations making it likely bills were actually submitted. *See id.* at 191. Details of a scheme that lead to such a strong inference that fraudulent claims were submitted have been characterized as allegations of "dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into." *Id.* Similarly regarding the false-records provision, the recording of a false record, when made with the requisite intent, is enough to satisfy the statute. There is no need to be able to infer that the claim was actually presented to the government for payment. *See id.* at 193.

### b. Presentment-provision allegations

Lockheed argues that Davis has failed to allege who presented a false claim, who received it, details of the submittals, the form of the claim, the amounts requested, or the amounts received. (Mot. Dismiss 17; Reply 6-7.) Lockheed also asserts that Davis failed to sufficiently allege the requisite intent or materiality of a false statement regarding a contractual requirement. (Mot. Dismiss 21-23; Reply 10-12.) Davis's FCA complaint is predicated on the assumption that "every claim for payment . . . is a false claim." (3rd Am. Compl. ¶ 95; *see also* 3rd Am. Compl. ¶¶ 85, 93, 103, 109, 115, 139.) But as Davis points out in his motion for reconsideration, he has additionally provided reliable indicia tying the alleged scheme (seeking to increase Lockheed's profits from the JSF contract by not following the expensive software-development standards) to allegations leading to a strong implication that false claims were actually presented. (Mot. for Recons. 7-11.) Specifically, Davis's third amended complaint pleaded descriptions and dates for several disputed services, some details regarding the JSF billing system, and Lockheed's implied intent in allegedly not following the software development standards. (3rd Am. Compl. ¶¶ 19-21, 74, 80-81, 96, 98-

121, 123-25, 128-33.) Likewise, Davis has alleged knowing misrepresentations by Lockheed. (3rd Am. Compl. ¶¶ 21-22, 32-33, 74, 80-81.) Specific intent to defraud is not required under the FCA and may be inferred from Lockheed's actions. *See* 31 U.S.C. § 3729(b)(1)(B); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033-34 (5th Cir. 2010). These averments, which this Court must accept as true, strongly imply that Lockheed knowingly made material false claims to the government for payment for software-development services that did not comply with internal and external standards for such services. Any details Lockheed argues are missing from Davis's third amended complaint are details that are within Lockheed's specific knowledge or control and, thus, are not fatal to Davis's claims. Davis has met the *Grubbs* requirements to successfully defend against a dismissal motion under Rule 12(b)(6). *See Grubbs*, 565 F.3d at 187 n.19.

### c. False-record allegations

Likewise, Davis's false-record claims are sufficiently pleaded. In a false-records claim, actual presentment is irrelevant; however, such a claim must include sufficient allegations of the recording of a false record with the requisite intent. *See id.* at 193. Of course, intent may be alleged generally. *See* Fed. R. Civ. P. 9(b); *see also supra*, footnote 3. As Davis contends in his motion for reconsideration, his third amended complaint alleges that false records and statements were recorded in the process of Lockheed's software development. (3rd Am. Compl. ¶¶ 98-100, 107, 109-10, 114, 117, 120-21, 123-24, 128.) These allegations are sufficient to successfully raise an FCA claim under the false-records provision. *See Grubbs*, 565 F.3d at 192-93.

### C. SUFFICIENCY OF RETALIATION PLEADING

As discussed above and conceded by Davis, Davis's claims for retaliation occurring before

the effective date of his release—February 22, 2006—are not actionable. (Mot. to Strike & Resp. 3-4.) But his claims that Lockheed retaliated against him after February 22, 2006, are not barred by the release. To state a claim under § 3730(h), Davis must show that he was engaged in activity in furtherance of an FCA claim, that Lockheed knew he was engaged in such activity, and that he suffered an adverse change in the terms and conditions of his employment as a result. *See* 31 U.S.C.A. § 3730(h)(1).

First, this Court agrees with Lockheed that § 3730(h) does not contemplate recovery for post-employment conduct. *See United States ex rel. Wright v. Cleo Wallace Ctrs.*, 132 F. Supp. 2d 913, 928 (D. Colo. 2000). (Reply 13-14.) Second, Davis's complaints to Lockheed and the government did not put Lockheed on notice that Davis was acting in furtherance of an FCA claim. *See Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3ᵈ Cir. 2001). Davis does not dispute this in his response. (Mot. to Strike & Resp. 3-4.) Thus, Davis has failed to sufficiently plead an actionable retaliation claim under the FCA. Indeed, in the motion for reconsideration and in the proposed order Davis submitted with his motion for reconsideration, Davis acknowledges that his post-employment retaliation claims must be dismissed. (Mot. for Recons. 16 n.8.)

### D. "OTHER CLAIMS"

In his third amended complaint, Davis asserts as "OTHER CLAIMS" Lockheed's "plant-wide failures to develop and test software products according to" the internal and external requirements for the JSF program. (3ʳᵈ Am. Compl. 12-13.) As with Davis's other FCA allegations, his "other claims" fail for a lack of specificity. Davis does not dispute this in his response or in his motion for reconsideration. (Mot. Dismiss 21 n.33; Reply 12 n.21.)

### E. MOTION TO STRIKE

In its appendix in support of its motion to dismiss, Lockheed attached a copy of an appellate brief filed in an unrelated case espousing the position that a release signed before a qui-tam action is filed is enforceable to bar the qui-tam action. (Lockheed App. 12-33.) Davis asserts that this portion of the appendix should be stricken because it is not permissible appendix material and is an attempt to circumvent this Court's page limitations. (Mot. to Strike & Resp. 1.) However, this Court did not rely on the disputed appendix portion and, in fact, agreed with Davis that his post-filing release is not effective to bar his pre-release FCA claims. Thus, Davis's motion is moot.

IV. CONCLUSION

Davis's retaliation claim is not actionable because he released all claims regarding his employment and because § 3730(h) does not contemplate a remedy for post-employment conduct by Lockheed. Thus, this claim and his amorphous "other claims" must be dismissed with prejudice. However, Davis's claims under the presentment and false-record provisions of the FCA meet the specificity requirements of Rules 8(a), 9(b), and 12(b)(6). Davis's FCA allegations under the presentment and false-records provisions, taken as true, raise his right to relief from conceivable to plausible. The dismissal of Davis's retaliation and "other" claims is without prejudice to the United

States, subject to the applicable statute of limitations. *See* 31 U.S.C.A. § 3731(b) (West 2003); *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 454-56 (5th Cir. 2005).

SIGNED November 15, 2010.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE